IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

JESSICA SINGLETON and
TONY COOPER, individually and on
behalf of all others similarly situated,

    Plaintiffs,                                CASE NO.: 6:19-cv-00200

v.                                           Class Action

ELEPHANT INSURANCE COMPANY,
a foreign insurance company,

    Defendant.

_____

**CLASS ACTION COMPLAINT FOR DAMAGES**

The Plaintiffs, Jessica Singleton and Tony Cooper, on behalf of themselves and all others similarly situated, files this Class Action Complaint against Elephant Insurance Company ("Elephant"), and in support thereof states the following:

**NATURE OF THE ACTION**

1. This is a class action lawsuit by Plaintiffs who were named insureds under separate (but materially identical) Elephant automobile policies issued for private passenger auto physical damage including comprehensive and collision coverage, which requires payment of "Actual Cash Value" or ACV.

2. Defendant Elephant is a large private passenger auto insurance carrier operating in Texas. One of the coverages Defendant offers is comprehensive and collision coverage. Upon information and belief, Defendant systematically underpaid Plaintiffs and thousands of other putative Class Members amounts owed to its insureds for ACV losses on total loss vehicles insured with comprehensive and collision coverage.

3. Defendant's policies and documents show that sales tax and mandatory title/tag transfer fees on the cash value of the insured vehicle at the time of loss are included in benefits provided by the comprehensive and collision coverage ACV for total loss vehicles.

4. This lawsuit is brought by the Plaintiffs and all other similarly situated insureds that have suffered damages due to Defendant's practice of refusing to pay full ACV Sales Tax and mandatory transfer fees to first-party total-loss insureds on physical damage policies containing comprehensive and collision coverages.

5. The failure to pay sales tax and state and local regulatory fees to first-party total losses owed to the Elephant insureds pursuant to the policy language is a breach of the policy.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative classes which consist of at least 100 members and she and the Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under 1332 apply to this claim.

7. Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and the Defendant is subject to personal jurisdiction in this district.

## THE PARTIES

8. At all times material hereto, the Plaintiff Jessica Singleton is and was a person domiciled and residing in McClennan County, Texas, and is a citizen of the State of Texas.

9. At all times material hereto, the Plaintiff Tony Cooper is and was a person domiciled and residing in Tarrant County, Texas, and is a citizen of the State of Texas.

10. At all times material hereto, the Defendant Elephant is and was a foreign corporation located in the State of Virginia and authorized to transact insurance in the State of Texas. Defendant is responsible for the standardized automobile insurance policies and claims handling and payments issued to Plaintiff and all putative class members. Defendant's principal place of business and headquarters are both located in the State of Virginia.

11. Defendant can be served via their registered agent for service of process: C.T. Corporation System, 1999 Bryan St, Ste 900, Dallas, Texas, 75201 -3136.

## AMOUNT-IN-CONTROVERSY

12. Defendant is one of the larger physical damage auto insurers in Texas based on premiums written.

13. Upon information and belief and the investigation of her attorneys, including total loss rates per physical damage premiums written by insurers in similar litigation to the present claim, Defendant insured, during the relevant time period, at a minimum approximately 9,000 total-loss claims.

14. The average total-loss claim vehicle value during the relevant time period is approximately $20,000. During the relevant time period, the State of Texas sales tax rate is 6.25%. Even a conservative average value of $15,000 would result in sales tax of $937.50 per claim, not even including local surtax (which ranges from 0% to 2% depending on county).

15. During the relevant time period, the State of Texas imposed a mandatory minimum title transfer fee of $33.00 and a minimum tag transfer fee of $2.50, according to the Texas Department of Motor Vehicles. Such amounts are, again, a minimum for purposes of demonstrating sufficient amount-in-controversy for jurisdictional purposes, and do not include mandatory local fee amounts.

16. Plaintiff's claim, as further set out herein, alleges that Defendant's contract obliges it to include sales tax and title/tag transfer fees to its insureds (including Plaintiff) in the event of a total loss, and that Defendant nevertheless uniformly declines to include sales tax and title transfer fees, thereby breaching its contract with every putative class member. 9,000 multiplied by $937.50 (a conservative estimate) is approximately $8.4 million. 9000 multiplied by $33.00 (the title transfer fee amount owed) is $297,000.  Thus, a conservative estimate of the amount-in-controversy is $8.6 million, not including any local sales tax, tag transfer fee amounts, interest under the Prompt Payment Act, pre or post-judgment interest, attorney's fees, injunctive or any other form of relief.

17. Thus, the fact that the amount-in-controversy exceeds $5,000,000 is plainly stated on the face of the complaint sufficient to confer jurisdiction. De Aguilar v. Boeing Co., 47 F.3d 1404 (5th Cir. 1995).

## FACTUAL ALLEGATIONS

18. Defendant Elephant's standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in all Elephant auto policies issued by Defendant in Texas.

19. ACV is standardly defined as "replacement cost less depreciation," and therefore, includes an obligation to pay sales tax in Texas equal to at least 6.25%[1] of the cash value of the insured vehicle at the time of loss (the "ACV Sales Tax"), along with state and local transfer fees for total loss vehicle comprehensive and collision coverage.

20. At all times material hereto, Plaintiff Singleton owned a 2007 Toyota Camry LE, VIN # JTNBK46K672072074.

---

[1] Texas sales tax is 6.25%. Additionally, some counties impose a local sales tax of up to 2% as allowed by state law.

4

21. At all times material hereto, Plaintiff Singleton insured the 2007 Toyota Camry LE under an insurance policy issued by Defendant.

22. On or about October 7, 2016, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of said accident, Plaintiff filed a claim for property damage with Defendant, claim number 2016-00110331-306144.

23. Following the filing of said claim, Defendant determined that the Insured Vehicle was a total loss with a base value of $6,509.00. After adjustments, Defendant determined that the Insured Vehicle had an Adjusted Vehicle Value of $4,885.00. Exh. A (Singleton Valuation Report).[2]

24. The base and adjusted vehicle values were calculated by a third-party vendor ("CCC") who bases vehicles valuations on the cost to purchase similar vehicles with similar conditions and mileage. CCC did not include any amounts for sales tax or transfer fees or any other fee in its Report.

25. Defendant did not include sales tax in making ACV payment, nor did Defendant include title transfer fees or any other amount in making ACV payment. Instead, Defendant paid only the adjusted "base value" of the vehicle of $4,885.00 and did not include sales tax or tag/title transfer fee or any other amount. Exh. B (Payment Explanation Letter).

26. Defendant's payment of merely the "base value" - and not sales tax or transfer fees - constituted a breach of its insurance policy.

27. At all times material hereto, Plaintiff Cooper owned a 2003 Lexus LS 430, VIN # JTHBN30F430105143.

28. At all times material hereto, Plaintiff Singleton insured the 2003 Lexus LS 430 under an insurance policy issued by Defendant.

---

[2] Some of the documents reference "Jessica Hitz". Ms. Singleton has subsequently become married and legally changed her maiden name (Hitz) to her current name (Singleton).

29. On or about September 4, 2017, Plaintiff Cooper was involved in an accident while operating the insured vehicle. As a result of said accident, Plaintiff filed a claim for property damage with Defendant, claim number 2017-00149373-410115.

30. Following the filing of said claim, Defendant determined that the vehicle was a total loss with a base value of $7,080.00. After adjustments, Defendant determined that the vehicle had an Adjusted Vehicle Value of $7,181.29. Exh. C (Cooper Valuation Report).[3]

31. As with Ms. Singleton, the base value was calculated by CCC. And also as with Ms. Singleton, CCC did not include any amounts for sales tax or transfer fees or any other fee in its Report for Mr. Cooper's vehicle.

32. Defendant did not include sales tax in making ACV payment, nor did Defendant include title transfer fees or any other amount in making ACV payment. Instead, Defendant paid (at most) only the adjusted "base value" of the vehicle minus the applicable deductible and did not include sales tax or tag/title transfer fee or any other amount.

33. Defendant's failure to include sales tax and transfer fees constituted a breach of its insurance policy.

34. Sales tax and title transfer fees and tag transfer fees are mandatory applicable costs that must be paid to replace any vehicle in the State of Texas.

35. No private-passenger replacement vehicle in Texas can be purchased without payment of sales tax and minimum mandatory regulatory fees.

36. Plaintiffs were owed sales tax in the amount of 6.25% of the agreed value of her vehicle, local surtax of 2%, and transfer fees of (at minimum) $35.50.

---

[3] Some of the documents reference "Jessica Hitz". Ms. Singleton has subsequently become married and legally changed her maiden name (Hitz) to her current name (Singleton).

37. In breach of its contract with Plaintiff Singleton, Defendant did not include any sales tax or transfer fees in making the ACV payment for her total loss.

38. In breach of its contract with Plaintiff Cooper, Defendant did not include any sales tax or transfer fees in making the ACV payment for his total loss.

39. Ms. Singleton paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident.

40. Mr. Cooper paid all premiums owed and otherwise satisfied all conditions precedent such that his insurance policy was in effect and operational at the time of the accident.

**THE ELEPHANT INSURANCE POLICY**

41. The insurance policy (Composite Exh. D)[4], under the section entitled "Damage to an Auto" (p. 18)[5], states that "Collision" coverage means, *inter alia*, coverage for loss to the insured vehicle when it "overturns or has physical impact with another vehicle or object[.]"

42. In the same section, under a provision entitled "Limits of Liability" (Id. at 23), states that in the event of loss, the limit of liability is the "actual cash value" of the vehicle at the time of loss, less any deductible and salvage value if the insured retains salvage title.

43. "Loss" is defined, in relevant part, as "sudden, direct and accidental damage or theft." Id. at 4.

44. There is no difference, for purposes of the duty to pay ACV on a first-party total loss claim, between a collision total-loss claim and an "other-than-collision" total-loss claim.

---

[4] Both Plaintiffs – and all putative class members – are insured under materially identical policy terms. The attached Policy is taken from Ms. Singleton's claim, but all allegations concerning Defendant's policy terms and definitions apply equally to both plaintiffs and all putative class members.
[5] Citations to the policy page numbers are pinpointed to the actual policy page number, rather than to the page number of the composite exhibit.

45. ACV is undefined in the policy. However, the policy states that ACV is determined by factors such as market value and the age and condition of the vehicle. Id. at 23.  ACV is standardly defined under Texas law as "replacement cost less depreciation."

46. Clearly, then, the policy language does not further define ACV as including: (1) any provision excluding sales tax or state and local regulatory fees from ACV; (2) any provision deferring payment of the ACV Sales Tax and state or local regulatory fees for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle; (4) any provision requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving ACV Sales Tax or state and regulatory fees; or (5) any provision linking the amount of ACV Sales Tax or state and regulatory fees to a particular replacement vehicle and the corresponding sales tax or state or local regulatory fees on said replacement vehicle.

47. The policy language applies to all covered autos irrespective of ownership interests - whether owned, financed or leased, insured autos are considered "owned" for purposes of the policy. Id. at 4 ("Owned" and "Owner" includes leased vehicles under a lease agreement of six months or more).

### PAYMENT OF SALES TAX AND MANDATORY FEES

48. Texas law is clear that if the terms of a policy are clear or unambiguous, the policy must be enforced as written. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Kasler Corp., 906 F.2d 196, 198 (5th Cir. 1990). If, however, the terms of a policy are susceptible to more than one reasonable interpretation – and are thus ambiguous – then "the court must adopt the insured's construction of the provision, 'as long as that construction is not unreasonable, even if the construction urged by the insurer appears more reasonable or a more accurate reflection of the parties' intent.'" Lubbock Cnty. Hosp. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,

8

143 F.3d 239, 242 (5th Cir. 1998) (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991)).

49. Defendant's Policy unambiguously provides coverage for sales tax and mandatory transfer fees as elements of the promised ACV payment for total-loss insured vehicles. Alternatively, coverage for sales tax and mandatory transfer fees is a reasonable interpretation of an ambiguous term, and thus the policy should be construed to provide such coverage. Either way, Defendant's policy promises coverage of sales tax and mandatory transfer fees.

50. Texas law imposes a mandatory replacement fee of $33.00 on the purchase of any vehicle, including, necessarily, the purchased replacement of a total loss vehicle. Tex. Stat. § 501.138(1).

51. In fact, in Texas, it is illegal to drive a vehicle on the road absent proper certificate of title – for which the $33.00 fee is imposed. Tex. Stat. § 501.022.

52. Texas law also makes it illegal to drive a vehicle without proper registration or tag, for which a fee of $2.50 is imposed to properly transfer tag to a replacement vehicle.

53. Under Texas law, "actual cash value" is synonymous with "fair market value," which is the price a willing purchaser who is under no obligation to buy would pay to a willing owner who is under no obligation to sell. City of Harlingen v. Estate of Sharboneau, 48 S.W.3d 177, 44 Tex. Sup. J. 747, 2001 WL 520838 at * 3 (Tex. 2001).

54. Fair market value can be calculated in one of three different ways: (1) comparable sales; (2) the income capitalization approach; or (3) the cost of repair or replacement less depreciation. See Religious of the Sacred Heart of Texas v. City of Houston, 836 S.W.2d 606, 615-16 (Tex. 1992). In the context of an actual cash value policy, the third option of calculating fair market value applies under Texas law – actual cash value, in other words, means the cost of replacement minus depreciation. Ghoman v. N.H. Ins. Co., 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001) (Actual cash value "means repair or replacement costs less depreciation."); Tolar

v. Allstate Tex. Lloyd's Co., 772 F. Supp. 2d 825 (N.D. Tex. 2011) (noting that Texas courts define ACV as "cost of replacement minus depreciation" and holding that it is "settled law" that insurers may not deduct sales tax from ACV payments).

55. In Ghoman, the court easily concluded that "replacement costs" means any costs likely to be incurred in replacement, including, among other things, sales tax. Ghoman at 934.

56. Title transfer fees and tag transfer fees are also likely to be incurred – indeed, they are necessarily incurred – upon replacement of the total-loss vehicle.

57. Defendant's policy promises to provide those costs reasonably likely to be incurred upon replacement, including sales tax and mandatory transfer fees. Nevertheless, Defendant declines to actually include sales tax and transfer fees in making ACV payment to total-loss insureds, thereby breaching its contracts with insureds. This breach of contract triggers an obligation by Defendant to pay 18% interest plus attorney's fees on all unpaid amounts paid on the claim under Section 542 of the Texas Insurance Code.

## CLASS ALLEGATIONS

58. Plaintiffs bring this action seeking representation of the below-defined classes pursuant to Fed. R. Civ. P. 23.

59. Plaintiffs are members of and seek to represent the following class in making their claim:

> All insureds, under any Texas policy issued by Elephant Insurance Company and its subsidiaries with the same operative policy language covering a vehicle with private-passenger auto physical damage coverage who made a first-party claim for total loss from March 8, 2015 to the date on which an Order certifying the class is entered, where such vehicle was declared a total loss, and whose claim was adjusted as a total loss.

60. Ms. Singleton seeks to represent Class Members who, as she did, made a claim from March 8, 2015, to March 8, 2017. Mr. Cooper seeks to represent Class Members who, as he did, made

a claim after March 8, 2017, up to and including the date on which this Court issues an order certifying the class.

61. Plaintiffs' claims are typical to those of all Class Members because members of the classes are similarly affected by Defendant's failure to pay ACV Sales Tax and mandatory transfer fees upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiffs' policies.

62. Plaintiffs' claim raises questions of law and fact common to all Class Members, within the meaning of FRCP 23(a)(2), and they predominate over any questions affecting only individual Class Members within the meaning of Rule 23(b)(3). Said common questions include, but are not limited to, the following: (a) whether, under Defendant's standardized policy language, Plaintiffs and the class members are owed ACV Sales Tax and mandatory fees upon the total loss of an insured vehicle; and (b) whether the Defendant has breached its insurance contracts with the Plaintiffs and every member of both classes by failing to pay ACV Sales Tax and state and mandatory fees upon the total loss of an insured vehicle.

63. Plaintiffs' claims are typical of the claims of all Class Members because all such claims arise from the allegedly improper failure by Defendant to pay ACV Sales Tax and state and local regulatory fees upon the total loss of insured vehicles.

64. Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the class. Neither plaintiff possesses an interest adverse to those of the Class Members.

65. Plaintiffs are committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. The undersigned counsel have collectively litigated thousands of first-party insurance claims under the Texas Insurance Code. Plaintiffs' counsel has also associated other counsel (who intend to apply for admission *pro hac*

11

*vice*) who have successfully litigated class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

66. Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining individual actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

67. Any argument that class treatment is not viable or productive in the present action is undercut by the fact that the Middle District of Florida very recently treated as a class action a case that is substantially identical in fact and in law to the present action. See *Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284 (M.D. Fla. December 10, 2015). *Bastian* was successfully settled as a class, and stands as incontrovertible evidence demonstrating the efficacy and viability of class treatment in the present action. Similarly, in the Southern District of Florida, <u>Roth v. Geico General Insurance Co.</u>, Case No. 16-62942-CIV-Dimitrouleas (S.D. Fla. June 14, 2018) is a substantially similar case recently certified as a class action with judgment granted in favor of the class.

68. The issues related to Plaintiffs' claims do not vary from the issues relating to the claims of the other Class Members, such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

69. Certification of the above class is also supported by the following considerations:

    a. The relatively small amount of damages that members of the class have suffered on an individual basis would not justify the prosecution of separate lawsuits;
    b. Counsel in this class action is not aware of any previously filed litigation against the Defendants in which any of the members of the class are a party and which any question of law or fact in the subject action can be adjudicated; and
    c. No difficulties would be encountered in the management of the claim on a class action basis, because the classes are readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

70. Although the precise number of members of the class are unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs believe that because Defendant is a large motor vehicle insurer in the State of Texas and writes hundreds of millions of dollars of private-passenger physical damage coverage premiums, the class of persons affected by Defendant's unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the class members. Thus, numerosity is established.

71. Fed. R. Civ. P. 23(a)(2)'s commonality requirement is satisfied for reasons articulated herein. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for classwide adjudication. Defendant and all class members are bound by the same materially identical policy terms. In addition to those reasons listed above, common questions include (but are not limited to): (1) Whether policy language ACV includes sales tax and mandatory fees, and (2) whether Defendant is required to pay sales

tax and mandatory fee amounts to insureds who suffer total-losses to vehicles insured under Defendant's Policies.

72. Fed. R. Civ. P. 23(a)(3)'s typicality requirement is satisfied for reasons articulated herein, and particularly because Plaintiff and Class Members were injured through Defendant's uniform misconduct. Further, Plaintiff's and Class Members' legal claims arise from the same core practices, namely, the failure to pay full ACV, including sales tax and title/tag transfer fees, for first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the Class Members. Plaintiff suffered the same harm as all the other Class Members: the coverage for sales tax and transfer fees that Defendant failed to pay its insureds.

73. Fed. R. Civ. P. 23(b)(3)'s requirements are met for all reasons already stated herein. Specifically, the previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Further, and as stated previously, class treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them, and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

74. The Class also meets the requirements for class treatment under Fed. R. Civ. P. 23(b)(2) because Defendants have acted, and refused to act, on grounds that apply generally to all the Class Members, thereby making final injunctive relief appropriate with respect to the Class as a whole. Defendant has created and implemented a uniform claims handling practice based on policy language that is applicable to all Class Members. Defendant's practice of failing to

pay full ACV, including sales tax and transfer fees, for first-party total loss claims applies generally to all Class Members and is ongoing.

75. Defendant's breach of Policy provisions requiring them to pay full ACV on total loss claims is a continuing breach and violation of Policy terms. Injunctive relief is necessary to stop these repeated and continued violations, which are likely to continue, repeat, and cause damages to Plaintiffs and the Class in the future.

## CLAIM FOR BREACH OF CONTRACT

76. The allegations contained herein are incorporated by reference.

77. This count is brought by Plaintiff Jessica Singleton and Plaintiff Tony Cooper on behalf of themselves and the Class Members.

78. Plaintiffs were party to an insurance contract with Defendant as described herein. All Class Members were parties to an insurance contract with Defendant containing materially identical terms.

79. The interpretation of Plaintiffs' and all Class Members' insurance Policies is governed by Texas law.

80. Plaintiffs and all Class Members made a claim determined by Defendant to be a first-party total loss under the insurance policy, and determined by Defendant to be a covered claim.

81. Defendants, by paying the total loss claims, determined that Plaintiffs and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies for each insured to be paid on his or her total loss.

82. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiffs and every Class Member were owed the actual cash value of the vehicle, including ACV Sales Tax and title and tag transfer fees.

83. Defendant refused to pay ACV Sales Tax and title and tag transfer fees to Plaintiffs and every Class Member.

84. Defendant's failure to provide coverage for the ACV Sales Tax and title and tag transfer fees constitutes a material breach of contract with Plaintiffs and every Class Member.

85. As a result of said breaches, Plaintiffs and the Class Members are entitled under Defendant's insurance policies to sums representing the benefits owed for ACV Sales Tax and title and tag transfer fees, as well as costs, prejudgment and postjudgment interest, injunctive relief and other relief as is appropriate.

86. In addition, Plaintiffs and the class members are entitled to an award of attorney's fees and costs.

## CLAIM FOR VIOLATION OF PROMPT PAYMENT OF CLAIMS STATUTE

87. Paragraphs 1-75 and 77-86 are hereby incorporated by reference.

88. The failure of Defendant to pay for the losses and/or to follow the statutory time guidelines for paying claims as set forth herein constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code.

89. Plaintiffs and all other Class Members, therefore, in addition to the claim for damages, are entitled to 18% interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs Jessica Singleton and Tony Cooper, individually and on behalf of the Class, demands a trial by jury on all triable issues and seeks and prays for relief and judgment as follows:

- For an Order certifying this action as a Class Action on behalf of the Class described above, and appointing Jessica Singleton as class representative of all Class Members

who made a claim from March 9, 2015 to March 9, 2017, and appointing Tony Cooper as class representative of all Class Members who made a claim after March 9, 2017;

- For an award of compensatory damages in amounts owed under the Policies;

- For injunctive relief to prevent continuation of this illegal practice and for other injunctive relief as is proven appropriate in this matter;

-  For all other damages according to proof;

- 18% interest on all amounts owed under Tex. Ins. Code 542.051 *et seq.*;

- For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including Tex. Civ. Prac. & Rem. Code § 38.001, and Tex. Ins. Code 542.051 *et seq.*;

- For costs of suit incurred herein;

- For pre and post judgment interests on any amounts awarded;

- For other and further forms of relief as this Court deems just and proper.

Dated this 9th day of March, 2019

Respectfully submitted,

**DALY & BLACK, P.C.**

By: */s/ Richard D. Daly*
Richard D. Daly
Texas Bar No. 00796429
John Scott Black
Texas Bar No. 24012292
Melissa Waden Wray
Texas Bar No. 24008614
2211 Norfolk, Suite 800
Houston, Texas 77098
Telephone: (713)655-1405
Facsimile: (713) 655-1587
jblack@dalyblack.com
rdaly@dalyblack.com
mwray@dalyblack.com

\* The following firms will be filing motions to be admitted *pro hac vice* promptly after this filing.

By: */s/ Ed Normand*
Edmund A. Normand, Esq.
FBN: 865590
Normand, PLLC
Jacob L. Phillips, Esq.
FBN: 0120130
Post Office Box 1400036
Orlando, FL 32814-0036
407.603.6031
firm@ednormand.com
ed@ednormand.com

By: */s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
FBN: 101754
ashamis@shamisgentile.com
14 NE 1 st Avenue, Suite 1205
Miami, FL, 33132
305.479.2299

*/s/ Scott Edelsberg*
Scott Edelsberg, Esq.
FBN: 0100537
scott@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL, 33180

By: */s/ Christopher J. Lynch*
FBN 331041
Christopher J. Lynch, P.A.
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchlaw.com

COUNSEL FOR PLAINTIFFS