IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

WACO DIVISION

| | | |
|---|---|---|
| JASON SINGELTON and TONY COOPER, individually and on behalf of all others similarly situated,<br>*Plaintiffs,*<br><br>v.<br><br>ELEPHANT INSURANCE COMPANY,<br>*Defendant.* | § § § § § § § § § § § | CIVIL NO. 6:19-CV-00200-ADA<br><br>CLASS ACTION |

## ORDER GRANTING DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

Before the Court is Defendant Elephant Insurance Company's Rule 12(b)(6) Motion to Dismiss. Docket Number 9. Plaintiffs timely filed their Response on April 16, 2019. Docket Number 12. Defendant timely filed its Reply on April 23, 2019. Docket Number 14. The Court has carefully reviewed the Parties' briefs and finds that Defendant's Motion should be granted for the following reasons.

### Background

Plaintiffs were insured under identical policies (the "Policy") issued by Defendant. Am. Compl. at 1. The Policy covers physical damage to the insured vehicle, which is subject to the Policy's Limits of Liability. Def.'s Mot. Ex. A at 18. Defendant's limit of liability for loss to an insured vehicle is the lowest of: (1) the actual cash value ("ACV") of the vehicle at the time of the loss; (2) the amount necessary to replace the stolen or damaged vehicle; (3) the amount necessary to repair the damaged property to its pre-loss condition; or (4) "[a]ny applicable Limits of Liability or Stated Amount Coverage shown on the **declarations page** . . . ." *Id.* at 23. "Loss" is defined as a "sudden, direct, and accidental damage or theft." *Id.* at 4. "Total loss" is defined

1

as either theft of the insured vehicle if it is not recovered within 30 days or where the cost to repair the vehicle plus salvage value exceeds the ACV of the insured vehicle. *Id.* at 19–20. ACV is not included in the "General Definitions" section or the "Additional Definitions" section that is applicable specifically to Part D of the Policy, which covers physical damage to an insured vehicle. *Id.* at 3–4, 19–20.

Plaintiffs Jason Singleton and Tony Cooper were both involved in motor vehicle accidents, and Defendant determined that both their vehicles were a "total loss." Am. Compl. at 5–6. Defendant then determined that both Plaintiffs properly submitted a covered claim and paid them according to the Policy's terms. *Id.* However, both payments failed to include any amount for sales tax or title or registration fees. *Id.* Instead, Defendant paid Plaintiffs Singleton and Cooper the adjusted "base value" of the vehicle as determined by a third-party vehicle valuation vendor. *Id.* Plaintiffs believe that Defendant's failure to include sales tax, title fees, and registration fees breaches the Policy, and that Defendant "identically failed and continues to fail to include such amounts in payments to all putative class members." Pls.' Resp. at 2.

## Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief must contain (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true and the facts are to be construed favorably to the plaintiff. *Fernandez–Montez v. Allied*

2

*Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## Analysis

In this case, Texas law applies because this is a diversity case. *Klumpe v. IBP, Inc.*, 309 F.3d 279, 281 (5th Cir. 2002). Texas courts interpret insurance policies in Texas according to the rules of contract construction. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). The policy should be considered as a whole so as to give each part effect and avoid rendering any portion superfluous. *Id.* Unless the policy says otherwise, courts give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017).

If policy language is worded so that it can be given a definite or certain legal meaning, then it is not ambiguous, and a court must construe it as a matter of law. *Schaefer*, 124 S.W.3d at 157. If no ambiguity exists, then "it is the duty of the court to enforce the policy in accordance with its plain meaning." *Nat'l Union Fire Ins. Co. v. Kasler Corp.*, 906 F.2d 196, 198 (5th Cir. 1990). If policy language is susceptible to more than one reasonable interpretation, then the language is ambiguous. *Schaefer*, 124 S.W.3d at 157. If an ambiguity exists, then a court must resolve the uncertainty by adopting the construction that favors the insured. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991). Ambiguities do not arise merely because the parties offer conflicting interpretations. *Schaefer*, 124 S.W.3d at 157. Whether a contract is ambiguous is a matter of law. *Id.*

3

Plaintiffs argue that Defendant's Policy does not define ACV; therefore, it must be given its plain, ordinary, and generally accepted meaning. Pls.' Resp. at 5–6. Plaintiffs contend that ACV's plain, ordinary, and generally accepted meaning is replacement costs minus depreciation. *Id.* at 6. Alternatively, even if ACV is defined as market value, Plaintiffs argue that "market value" is an ambiguous term and must be resolved in favor of Plaintiffs. *Id.* at 6–10. Plaintiffs believe that their policy interpretation and understanding of ACV "is practically axiomatic." *Id.* at 10. Defendant, on the other hand, contends that the Policy defines ACV and that the Policy's language is unambiguous; therefore, the Court should enforce the Policy according to its terms. Def.'s Mot. at 7–9.

### A. The Policy unambiguously defines "actual cash value" as the value determined by Defendant after considering the insured vehicle's market value, age, and condition.

Plaintiffs argue that ACV is undefined because it was not included as a defined term in the Policy. Pls.' Resp. at 6. However, the case law cited by Plaintiffs does not support this proposition. In *Certain Underwriters at Lloyd's v. LM Ericcson Telefon, AB*, the issue before the court was the proper interpretation of **"you"** and "you" in an insurance policy. 272 S.W.3d 691, 696 (Tex. App.—Dallas 2008, pet. denied). In that policy, "you" is bolded in one part of the policy but not the other. The court held that although "[t]hey are the same words . . . they are, in effect, different terms" because **"you"** and "you" have different assigned meanings. *Id.* at 696–97. In other words, no "reasonable reader would construe '**you**' to have the meaning assigned to 'you'" because the policy defines both terms differently. *Id.*

Plaintiffs contend that *Certain Underwriters*' holding means that a term not included in the defined terms section must be given its plain, ordinary, and generally accepted meaning. Pls.' Resp. at 6. However, *Certain Underwriters* merely held that when a term is bolded and included in the defined terms section, then it will have that assigned meaning. Nothing in *Certain*

4

*Underwriters* suggests that a term must be bolded in order for it to be considered a defined term, or that a term must be a defined term to have an assigned meaning. In fact, *Certain Underwriters* comes to the opposite conclusion in that it finds that "you" had an assigned meaning despite not being bolded or included in the policy as a defined term. *Id.* at 696. As such, the Court does not find that ACV is an undefined term merely because it is not in bold face throughout the Policy or included as a defined term.[1]

Instead, the Court agrees with Defendant and finds that the Policy unambiguously defines ACV. The Policy defines ACV as follows: "The actual cash value is determined by the market value, age, and condition of the **auto** . . . at the time the **loss** occurs." Def.'s Mot. Ex. A at 23. "Determine" means "[t]o come to a judicial decision; to give a decision; to decide." *Determine, v.*, OXFORD ENGLISH DICTIONARY (3d ed. 2000). As such, Defendant must come to a decision regarding ACV by considering the market value, age, and condition of the insured vehicle.

Although it might not be the clearest definition, the Policy's language describes what ACV is, which is a definition's purpose. WILLIAM LESLIE DAVIDSON, THE LOGIC OF DEFINITION: EXPLAINED AND APPLIED 32 (1885) ("It is the object of Definition to determine the nature or meaning or signification of a thing . . . in other words, definition is the formal attempt to answer the question, 'What is it?'"). Based on the Policy's definition, ACV is the insured vehicle's value, which is based on the vehicle's market value, age, and condition. This value is determined by Defendant after considering the vehicle's market value, age, and condition.[2] Whatever value

---

[1] Plaintiffs also rely on *AIG Specialty Ins. Co. v. Stoller Enters.*, No. 4:16-CV-26, 2017 U.S. Dist. LEXIS 65591, at *28–29 (S.D. Tex. Feb. 7, 2017). The Court finds that this case does not support Plaintiffs' argument for the same reasons *Certain Underwriters* fails to do so. Similar to *Certain Underwriters*, *AIG Specialty* held that the same word did not necessarily have the same meaning in both policies because the word was a "defined term" in one policy but not the other. *Id.* at *29 ("Because the Umbrella Policy specifically defines the bolded term '**policy period**,' it is not the same term as 'policy period' in the CGL Policy.")

[2] Plaintiffs argue that this definition is "self-evidently nonsensical." Pls.' Resp. at 7. Plaintiffs make this definition appear nonsensical because they read market value, age, and condition in the disjunctive rather than the conjunctive.

5

Defendant comes up with is the insured vehicle's ACV. The Court finds that this definition is not susceptible to more than one interpretation; therefore, it is unambiguous and must be enforced in accordance with its plain meaning. *Kasler Corp.*, 906 F.2d at 198.

### B. "Market value" is an unambiguous term and has the following certain legal meaning: "[T]he price property would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying it."

Plaintiffs argue that even if the Policy defines ACV, "market value" is an ambiguous term and must interpreted in favor of insureds. Pls.' Resp. at 6. Texas courts have interpreted "market value" as follows: "[T]he price property would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying it." *Exxon Corp. v. Middleton*, 613 S.W.2d 240, 246 (Tex. 1981); *Tex. Farm Bureau Mut. Ins. Co. v. Wilde*, 385 S.W.3d 733, 736 (Tex. App.—El Paso, no pet.), *abrogated by J&D Towing, LLC v. Am. Alt. Ins. Corp.*, 478 S.W.3d 649 (Tex. 2016); Tex. Jur. Insurance Contracts and Coverage § 894. According to Plaintiffs, sales tax must be included in this definition because "[a] purchaser who is unwilling to pay sales tax (or a seller who is unwilling to impose sales tax)—where failure to do so is a felony . . . is simply not a willing purchaser or seller." Pls.' Resp. at 8. However, Plaintiffs provide no authority to support their position. Moreover, the Court is unaware of any Texas statute or regulation that requires payment of sales tax or transfer fees when an auto insurance carrier pays ACV in a total loss situation. As such, the Court will not give meaning to a term that Texas courts and the Texas legislature have chosen not to give.

---

For example, Plaintiffs state in regard to the definition: "The limit of liability is the age of the vehicle? Plaintiff Singleton's vehicle was nine years old . . . does this mean Defendant's 'limit of liability' was nine years old?" Plaintiffs intentionally, or perhaps unintentionally, read age apart from condition and market value. However, the definition clearly states that all three factors are to be considered *as a whole* by including the word "and." Once all three factors are considered together, the definition is no longer nonsensical since a vehicle's age and condition have an impact on a vehicle's market value.

6

Additionally, Plaintiffs contend that "market value" can be determined in one of three ways: (1) comparable sales; (2) the income capitalization approach; or (3) the cost of repair or replacement less depreciation. Pls.' Resp. at 8. According to Plaintiffs, because "the law provides three different methods of determining fair market value, it cannot be said that one of those is an *unreasonable* interpretation, and as such the term would be ambiguous . . . ." *Id.* Plaintiffs rely on *Religious of the Sacred Heart of Texas v. City of Houston* to support their position. 836 S.W.2d 606, 615–16 (Tex. 1992). However, as Defendant rightly points out, *Sacred Heart* is distinguishable from Plaintiffs' case. *Sacred Heart* was a condemnation action that involved the partial taking of a private school for the purpose of extending a roadway. *Id.* at 606. The Texas Supreme Court's discussion regarding market value was only in relation to condemnation—there is no indication its holding was intended to apply to personal property, such as automobiles. *See id.* at 615 (citing J. GELIN & D. MILLER, THE FEDERAL LAW OF EMINENT DOMAIN (1982) and M. RAYBURN, RAYBURN ON CONDEMNATION (1987) when discussing the various methods of determining market value for real property).

Additionally, *Sacred Heart* presented a "unique situation involving the partial taking of a *special purpose* property" that presented problems when determining the property's market value. In cases involving unique or special purpose property, courts may use a number of different approaches because of a lack of comparable sales. *See id.* at 615 ("Where a building is a *specialty* . . . the valuation cannot be predicated on the same basis as a building constructed for general or usual dwelling or commercial use. In the case of a specialty there is a *limited market* and the customary testimony of market price is not available.") (quoting NICHOLS, NICHOLS ON EMINENT DOMAIN, § 12C.01[3] (3d ed. 1978)) (emphasis added); *id.* ("[I]n the absence of sales prices of similar property, the court must find some other criterion of value . . . .") (quoting

ORGEL, VALUATION UNDER THE LAW OF EMINENT DOMAIN, § 246 (2d ed. 1953)). The lack of comparable sales is not a problem that is presented in the automobile market. Furthermore, Plaintiffs have failed to explain to the Court what special problems are faced when determining an automobile's market value that would require an approach like the one taken in *Sacred Heart*. As such, the Court is unpersuaded that a rule of law created for unique or special property with a limited market should be applied to the automobile market, which has a large market of comparable sales. Because of the foregoing reasons, the Court finds that the term "market value" is unambiguous and should have the legal meaning assigned to it by Texas courts, which is: "[T]he price property would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying it." *Middleton*, 613 S.W.2d at 246.[3]

### C. Plaintiffs' Prompt Payment Act claims should be dismissed because Defendant did not breach the Policy.

Based on the foregoing subsections, the Court has found that ACV, in this Policy, does not mean replacement costs minus depreciation; therefore, Defendant was not required to pay Plaintiffs sales tax and transfer fees. As a result, Defendant did not breach the Policy between it and Plaintiffs; therefore, Defendant did not violate the Prompt Payment Act. *Tremago, L.P. v.*

---

[3] Plaintiffs also argue that overwhelming case law across multiple jurisdictions favors their policy interpretation. Pls.' Resp. at 10. As stated before, because this is a diversity case, Texas law applies. *Klumpe*, 309 F.3d at 281. As such, even assuming other states might be interpreting ACV differently than Texas, it is not the Court's duty to legislate on behalf of Texas from the bench. If Texas wants to define ACV as replacement costs minus depreciation, then Texas may do so.

Finally, Plaintiffs argue that basic principles of insurance favor their policy interpretation because "ACV policies are policies of indemnification, which are intended to place insureds into their pre-loss position, or their position had the loss not occurred." Pls.' Resp. at 13. Paying sales tax on a vehicle is mandatory; therefore, failing to pay sales tax fails to place an insured into the position that he or she was in prior to the loss. *Id.* at 14. As such, according to Plaintiffs, Defendant's Policy is not a policy of indemnification. *Id.* However, "the duty to indemnify the insured" only entails "pay[ing] all *covered* claims and judgments against an insured . . . ." *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 743 (Tex. 2009) (emphasis added). The Court has found that the Policy is unambiguous, and that ACV, in this Policy, does not mean replacement costs minus depreciation. Accordingly, Defendant did not fail to indemnify Plaintiffs because it paid all covered claims.

8

*Euler-Hermes Am. Credit Indem. Co.*, 602 F. App'x 981, 983 (5th Cir. 2015) ("[I]nsurance agencies are required to pay . . . [Prompt Payment Act] damages only after having first been found liable for the claim.") (quoting *Amine v. Liberty Lloyds of Tex. Ins. Co.*, No. 01-06-00396-CV, 2007 WL 2264477, at *5 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). Accordingly, Plaintiffs' Prompt Payment Act claim should also be dismissed.

## Conclusion

Because of the foregoing, the Court finds that Defendant's Motion to Dismiss should be granted. The Court finds that Plaintiffs have failed to state a claim because: (1) the Policy unambiguously defines ACV; (2) "market value" is an unambiguous term that has a certain legal meaning; and (3) Defendant did not breach the Policy; therefore, Plaintiffs cannot bring a claim under the Prompt Payment Act. Accordingly, Defendant's Motion to Dismiss is **GRANTED**. The Court's Final Judgment will be issued in a separate Order.

**SIGNED** this 10th day of May 2019.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE